**No. 14-55822**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

JOANNE ANDERSON, et al.
*Plaintiffs-Appellants*,

v.

DEUTSCHE BANK NATIONAL TRUST COMPANY AMERICAS, et al.
*Defendants-Appellees*.

_____

On Appeal from the United States District Court
for the Central District of California
Before the Honorable James V. Selna
No. 8:11-cv-00006-JVS-RNB

_____

**APPELLEES AURORA LOAN SERVICES LLC'S AND NATIONSTAR
MORTGAGE LLC'S ANSWERING BRIEF**

JUSTIN D. BALSER                         MELISSA L. CIZMORRIS
**AKERMAN LLP**                          **AKERMAN LLP**
725 South Figueroa St., 38th Floor       1400 Wewatta Street, Suite 500
Los Angeles, California 90017            Denver, Colorado 80202
T: (213) 688-9500/F: (213) 627-6342      T: (303) 260-7712/Fax: (303) 260-7714

## <u>CORPORATE DISCLOSURE STATEMENT</u>

[Pursuant to Fed. R. App. P. 26.1]

Appellee Aurora Loan Services LLC (**Aurora**) is a wholly-owned subsidiary of Aurora Commercial Corp. Aurora Commercial Corp. is the successor entity to Aurora Bank FSB. Aurora Commercial Corp. is a wholly-owned subsidiary of Lehman Brothers Bancorp Inc., which is a wholly-owned subsidiary of Lehman Brothers Holdings Inc. No publicly-traded entity owns 10% or more of Aurora Commercial Corp.'s stock.

Appellee Nationstar Mortgage LLC (**Nationstar**) is a Delaware limited liability company that is wholly owned by Nationstar Sub1 LLC and Nationstar Sub2 LLC. Nationstar Sub1 LLC and Nationstar Sub2 LLC are Delaware limited liability companies that are wholly owned by Nationstar Mortgage Holdings, Inc., a publicly-traded company on the New York Stock Exchange (NYSE: NSM). Nationstar Mortgage Holdings, Inc. does not have any parents corporations, no publicly-held company has an ownership interest of ten percent or more in Nationstar Mortgage Holdings, Inc.

DATED this 11th day of June, 2015

Respectfully submitted,

By: _/s/ Justin D. Balser_
Justin D. Balser

Justin D. Balser
**AKERMAN LLP**
725 S. Figueroa Street, 38th Floor
Los Angeles, California 90017

Melissa L. Cizmorris
**AKERMAN LLP**
1400 Wewatta St., Suite 500
Denver, Colorado 80202

Attorneys for Defendants/Appellees
AURORA LOAN SERVICES LLC
AND NATIONSTAR MORTGAGE
LLC

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT .......................................................1

STATEMENT OF ISSUES ..............................................................4

STATEMENT OF THE CASE ...........................................................4

SUMMARY OF THE ARGUMENT ....................................................6

RELEVANT FACTS .....................................................................8

    I.    Steve Burke..................................................................8

    II.   Richard Apostolos .........................................................12

    III.  Joanne Anderson ...........................................................14

    IV.  Angela Brown ..............................................................16

STANDARDS OF APPELLATE REVIEW .........................................18

    I.    District Court's Holding on Motion to Dismiss Reviewed *De Novo* ....18

    II.   Issues Not Raised Below Should Not Be Considered On Appeal .......20

ARGUMENT ..............................................................................21

    I.    The District Court Properly Dismissed Appellants' Negligence-Based Claims Based on its Determination Neither Aurora nor Nationstar Owed Appellants a Duty of Care .........................................21

        A.    The *Biakanja* Factors Do Not Support a Finding of a Duty of Care .........................................................................24

        B.    Assuming *Arguendo* Appellees Owed a Duty of Care, Appellants Fail to Allege a Breach of Any Such Duty ..............29

        C.    Appellants' Negligence-Based Claims are Preempted ................31

    II.   The District Court Properly Dismissed Anderson's Claim for Wrongful Death .........................................................34

    III.  The District Court Properly Dismissed Appellants' Rosenthal Act Claim......................................................................37

CONCLUSION ...........................................................................45

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*AE ex rel. Hernandez v. County of Tulare*,
  666 F.3d 631 (9th Cir. 2012) ...........................................................................18

*Alvarez v. BAC Home Loans, LLP*,
  228 Cal.App.4th 941 (2014) ....................................................................passim

*Aspiras v. Wells Fargo Bank, N.A.*,
  219 Cal.App.4th 948 (2013) ....................................................................passim

*Bank of Am. v. City & Cnty. of S.F.*,
  309 F.3d 551 (9th Cir. 2002) ...........................................................................31

*Barret v. Superior Ct.*,
  222 Cal.App.3d 1176 (1990) ...........................................................................36

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .........................................................................................19

*Bhandari v. Capital One, N.A.*,
  No. 12-04533 PSG, 2013 WL 1736789 (N.D. Cal. Apr. 22, 2013) ..................39

*Biakanja v. Irving,*
  49 Cal.2d 647 (1958) ................................................................................passim

*Cordova v. Am.'s Servicing Co.*,
  No. C 08–05728 SI, 2009 WL 1814592, at *2 (N.D.Cal. June 24, 2009) .........38

*Das v. Bank of America*,
  186 Cal.App.4th 727 (2010) .............................................................................22

*DeLeon v. Wells Fargo Bank, NA*,
  729 F. Supp. 2d 1119 (N.D. Cal. 2010).............................................................34

*Gardner v. Am. Home Mortg. Servicing, Inc.*,
  691 F.Supp.2d 1192 (E.D. Cal. 2010) ..............................................................39

*Guillermo v. Caliber Home Loans, Inc.*,
  No. C 14-04212 JSW, 2015 WL 1306851 (N.D. Cal. March 23, 2015)............29

*Haggarty v. Wells Fargo Bank, N.A.*,
  No. C 10-02416 CRB, 2012 WL 4742815 (N.D. Cal. Oct. 3, 2012) ................32

*Hart v. FCI Lender Servs., Inc.*,
  No. 13-CV-6076 CJS, 2014 WL 198337 (W.D.N.Y. Jan. 15, 2014)................42

*Hayes v. Wells Fargo Bank, N.A.*,
  No. 13-cv-0420 KAW, 2013 WL 4117050 (N.D. Cal. Aug. 12, 2013)............34

*In re Am. W. Airlines, Inc.*,
  217 F.3d 1161 (9th Cir. 2000) ...........................................................................20

*In re Vantive Corp. Sec. Litig.*,
  283 F.3d 1079 (9th Cir. 2002) ...........................................................................19

*Izenberg v. ETS Servs., LLC*,
  589 F.Supp.2d 1193 (C.D. Cal. 2008) ...............................................................39

*Jacoves v. United Merchandising Corp.*,
  9 Cal.App.4th 88 (1992) ...............................................................................36, 37

*Johnson v. Wells Fargo Home Mortg., Inc.*,
  635 F.3d 401 (9th Cir. 2011) .............................................................................19

*Jolley v. Chase Home Fin., LLC*,
  213 Cal.App.4th 872 (2013) ................................................................................3

*Keen v. Am. Home Mortg. Servicing*,
  No. 2-09-01026, 2009 WL 3380454 (E.D. Cal. Oct. 21, 2009) ........................39

*King County v. Rasmussen*,
  299 F.3d 1077 (9th Cir. 2002) ...........................................................................20

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) ...........................................................................18

*Lal v. Am. Home Servicing, Inc.*,
  680 F.Supp.2d 1218 (E.D. Cal. 2010) ...............................................................38

iii

*Livid Holdings, Ltd. v. Solomon Smith Barney, Inc.*,
    416 F.3d 940 (9th Cir. 2005) ..............................................................................19

*Lueras v. BAC Home Loans Servicing, LP*,
    221 Cal.App.4th 49 (2013) ...........................................................................passim

*Marshall v. Wells Fargo Bank*,
    No. C–13–01747 EDL, 2013 WL 3287687 (N.D. Cal. June 27, 2013) .............34

*Mendoza v. City of L.A.*,
    66 Cal.App.4th 1333 (1998) .............................................................................36

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
    540 F.3d 1049 (9th Cir. 2008) ..........................................................................19

*Meyer v. Ameriquest Mortg. Co.*,
    342 F.3d 899 (9th Cir. 2003) ............................................................................20

*Miguel v. Country Funding Corp.*,
    309 F.3d 1161 (9th Cir. 2002) ..........................................................................20

*Myers v. Merrill Lynch & Co.*,
    249 F.3d 1087 (9th Cir. 2001) ..........................................................................20

*Nastrom v. JPMorgan Chase Bank, N.A.*,
    No. 1:11cv01998 DLB, 2012 WL 5522795 (E.D. Cal. Nov. 14, 2012)............27

*Nool v. Home Servicing*,
    653 F.Supp.2d 1047 (E.D. Cal. 2009) ..............................................................38

*Norgart v. Upjohn Co.*,
    21 Cal.4th 383 (1999) .......................................................................................34

*Nymark v. Heart Fed. Savings & Loan Ass'n*,
    231 Cal.App.3d 1089 (1991) .............................................................22, 24, 25

*O'Guinn v. Lovelock Correctional Center*,
    502 F.3d 1056 (9th Cir. 2007) ..........................................................................20

*Olivier v. NDEX West*,
    LLC, No. 1:09–CV–00099 OWW GSA, 2009 WL 2486314 (E.D. Cal.
    Aug. 10, 2009) ..................................................................................................38

iv

*Peter W. v. San Francisco Unified School Dist.,*
    60 Cal.App.3d 814 (1976) ...........................................................................22

*Pittman v. Barclays Capital Real Estate Inc.,*
    No. 09 CV 241, 2009 WL 1108889 (S.D. Cal. April 24, 2009)...............39

*Premo v. Grigg,*
    237 Cal.App.2d 192 (1965) .......................................................................22

*Quelimane Co. v. Stewart Title Guaranty Co.,*
    19 Cal.4th 26 (1998) ..................................................................................22

*Quiroz v. Seventh Ave. Center,*
    140 Cal.App.4th 1256 (2006) ....................................................................36

*Rice v. Santa Fe Elevator,*
    331 U.S. 218 (1947)...................................................................................31

*Santoro v. CTC Foreclosure Serv.,*
    12 F. App'x 476 (9th Cir. 2001)................................................................44

*Settle v. World Savings Bank, F.S.B.,*
    No. ED CV 11–00800 MMM, 2012 WL 6176905 (C.D. Cal. Jan. 11,
    2012) ..........................................................................................................32

*Silvas v. E\*Trade Mortg. Corp.,*
    514 F.3d 1001 (9th Cir. 2008) .............................................................32, 33

*State Farm Bank, FSB v. Reardon,*
    539 F.3d 336 (6th Cir. 2008) .....................................................................33

*Stiles v. Wells Fargo Bank,*
    No. C-14-04169 DMR, 2014 WL 7146950 (N.D. Cal. Dec. 15, 2014).............30

*Thompson v. Paul,*
    547 1055, 1058-59 (9th Cir. 2008) ...........................................................18

*U.S. v. Bushyhead,*
    270 F.3d 905 (9th Cir. 2001) .....................................................................20

*U.S. v. Etsitty,*
    130 F.3d 420 (9th Cir. 1997) .....................................................................20

*U.S. v. McDonald*,
178 F.Appx.643 (9th Cir. 2006) ........................................................20

*Williams v. Wells Fargo Bank, N.A.*,
No. 11–21233–CIV, 2011 WL 4901346 (S.D. Fla. Oct. 14, 2011) ..................32

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) ............................................................19

STATUTES

12 U.S.C. § 2605 ....................................................................8, 44, 41

15 U.S.C. § 1692 ....................................................................42, 44

*Cal. Civ. Code* § 377.14 .............................................................43

*Cal. Civ. Code* § 1788.2 ...........................................................39

*Cal. Civ. Code* § 2920.5 ...........................................................25

OTHER AUTHORITIES

12 C.F.R. § 560.2(a) ...................................................................32

12 C.F.R. §560.2(b)(1)-(13) ........................................................33

12 C.F.R. § 560.2(b)(10) ............................................................34

75 Fed. Reg. 57252 (Sept. 20, 2010) ..........................................32

Cal. *Bus & Professions Code* §§ 17200 and 17500 .................................21

## JURISDICTIONAL STATEMENT

Former parties, Eddie Yau and Gloria Yau, filed this suit on January 3, 2011 in the United States District Court for the Central District of California. (Appellants' Excerpts of Record (**EOR**) 5:639-822.) The original complaint alleged eleven causes of action against Deutsche Bank National Trust Company Americas (**Deutsche**) and Aurora Loan Services LLC (**Aurora**). Aurora and Deutsche moved to dismiss that complaint and the Yaus proceeded to file a first amended complaint (**FAC**) with newly added plaintiffs on March 11, 2011. (EOR 5:846.) The FAC alleged two claims for fraud and a claim for unfair business practices under California *Business & Professions Code* section 17200, among others, but was later dismissed on May 9, 2011. (EOR 5:855.)

Appellants were granted leave to amend those claims dismissed without prejudice and filed a second amended complaint (**SAC**) on June 8, 2011, this time bringing new claims (without leave of court) for negligence, violation of the Rosenthal Act Fair Debt Collection Practices Act (**Rosenthal Act** or **RFDCPA**), two fraud claims, and a realleged claim for unfair business practices under Cal. *Bus. & Prof. Code* § 17200, among others. (EOR 5:855.) The district court dismissed the SAC on August 31, 2011 (with the fraud-based claims dismissed with prejudice). (EOR 5:861.)

1

Appellants filed a third amended complaint (**TAC**) on September 9, 2011, this time alleging only a single cause of action for breach of contract against Aurora. (EOR 4:588-638.) Two days after filing the TAC, appellants moved for leave to amend. (EOR 5:862.) A proposed fourth amended complaint was attached to their motion, which included a revised breach of contract claim, as well as a negligence claim, a UCL claim and claims under the Rosenthal Act – all of which the district court previously dismissed from the SAC with leave to amend, but which were voluntarily dropped from the TAC.

On November 8, 2011, the district court granted Aurora's motion to dismiss with prejudice and denied appellants' motion for leave to amend after a thorough analysis of each proposed claim and "finding further amendment futile." (EOR 1:149; EOR 5:865.) On December 20, 2011, Joanne Anderson, Angela Brown, Steve Burke and Richard Apostolos appealed the district court's minute order. (EOR 4:583.) Class representatives, Gloria and Eddie Yau, failed to timely appeal, as did Chen Pi, Robert Rhoades, Nicole Rhoades, Jeremy John Dale and Alice Mbaabu.

On May 24, 2013, this Court affirmed in part, reversed in part, and remanded the case with specific instructions to determine if an amended complaint as to the claim of negligence was proper. (EOR 1:136-142.) On July 3, 2013, the court gave plaintiffs leave to amend their negligence claim in conformance with

*Jolley v. Chase Home Fin., LLC*, 213 Cal.App.4th 872 (2013) and the Ninth Circuit's mandate. *Id.*

Despite the narrow scope of the remand, and without leave of court, appellants filed a fourth amended complaint (**4AC**) adding twelve new parties and seven new claims for relief.[1]  (EOR 3:389-458.)  The theories alleged in the 4AC include negligence, wrongful death, intentional infliction of emotion distress, fraud, violation of Cal. *Bus. & Prof. Code* § 17200, violation of Cal. *Bus. & Prof. Code* § 17500, aiding and abetting violations of Cal. *Bus. & Prof. Code* § 17200 as well as Rosenthal Act violations against newly added defendant, Nationstar.[2]  *Id.* On December 18, 2013, the district court issued an order dismissing the 4AC with prejudice, with the exception of appellants' Rosenthal Act and wrongful death causes of action, both of which were dismissed without prejudice.  (EOR 1:54-69.)

Appellants filed their final and fifth amended district court complaint (**5AC**) on January 31, 2014, this time alleging wrongful death against Aurora and

---

[1] Former "class representatives," the Yaus, were not included as plaintiffs in the fourth amended complaint.

[2] The proposed fourth amended complaint previously attached to the third amended complaint included an identical Rosenthal Act violation against Aurora. The Court denied appellants' motion for leave to file the proposed complaint on November 8, 2011, partially based on it finding the Rosenthal claims against Aurora had no merit.  (EOR 1:149; EOR 5:865.)  In response, appellants added Nationstar to the suit (without leave of court) and realleged the same claims.

Rosenthal Act violations against Nationstar. (EOR 3:349-388.) On April 16, 2014, the district court dismissed the 5AC with prejudice. (EOR 1:10-16.)

On May 19, 2014, appellants appealed the district court's order granting Aurora and Nationstar's motion to dismiss the 5AC with prejudice. (EOR 3:322-324.) Angela Brown, Joanne Anderson and Steve Burke also appealed from the order granting Aurora and Nationstar's motion to dismiss the 4AC, entered by the district court on December 18, 2013. *Id*.

## STATEMENT OF ISSUES

1.    Did appellees (loan servicers) owe appellants (loan borrowers) a duty of care in the course of their loan modification reviews such that appellants' negligence and negligence-based claims can withstand a motion to dismiss?

2.    Did the district court err in dismissing appellants' Rosenthal Act claim brought against Nationstar for mailing a federally mandated service transfer notification?

3.    Did the district court err in dismissing the cause of action for wrongful death where appellants raised no plausible allegation to establish appellees caused the death of appellant Joanne Anderson's non-borrower domestic partner?

## STATEMENT OF THE CASE

Since 2011, appellants have filed six complaints, three Ninth Circuit appeals, unilaterally added numerous parties and claims without leave of court, and have

continuously realleged theories dismissed by the district court, all in a relentless effort to somehow plead a cognizable claim against appellees. The current appeal fares no better. This five and a half year saga, which began as a breach of contract action against Aurora, has now morphed into an appeal where appellants absurdly suggest Aurora is guilty of murder. The plaintiffs—which at times have included individuals who never had loans with Aurora or Nationstar—have pled every conceivable theory they can muster to maintain an action against appellees.

Despite their attempt to broadly frame the issues to their favor, the crux of the case centers on appellants' claim Aurora violated California statutory and common law by denying permanent HAMP modifications to borrowers whose applications were reviewed but ultimately properly denied. Three narrow, predominant questions remain for this Court to consider. They are: 1) whether appellees (loan servicers) owed appellants (loan borrowers) a duty of care in the course of their loan modification reviews such that appellants' negligence and negligence-based claims can withstand a motion to dismiss; 2) whether the district court erred in dismissing appellants' Rosenthal Act claim brought against Nationstar for mailing a federally mandated service transfer notification; and 3) whether the district court erred in dismissing the cause of action for wrongful death where appellants raised no plausible allegation to establish appellees caused the death of Anderson's non-borrower domestic partner.

Recognizing the recent depublication of the *Aspiras* matter, appellants nonetheless provide zero factual basis in their fourth amended complaint or opening brief demonstrating the district court erred in holding the loan servicer appellees did not owe a duty of care. Even assuming a loan servicer may in some instances owe a duty of care, an analysis of the six-factor test espoused in *Biakanja v. Irving* does not support any such finding in this particular case. Appellants' Rosenthal Act claim against Nationstar is similarly flawed. The district court properly recognized Nationstar was not attempting to collect a debt when it sent appellants notification of the service transfer from Aurora and was instead simply complying with federally mandated notice requirements. And, lastly, the district court properly dismissed Joanne Anderson's cause of action for wrongful death as the fifth amended complaint does not allege facts to meet the claim's requisite elements.[3]

## SUMMARY OF THE ARGUMENT

Appellants' opening brief appeals two orders entered by the district court granting appellees' motions to dismiss with respect to appellants' negligence-based theories, claims for wrongful death and alleged violations of the Rosenthal Act.

---

[3] While sympathetic to appellant Anderson's loss, appellees contend there is no support for Anderson's theory, which has now curiously morphed into an accusation of homicide. Anderson claims Aurora and Nationstar are culpable for "murder" due to their failure to provide her with a permanent loan modification—a defamatory allegation with zero factual bases.

Appellants' claims are based on two primary allegations: first, appellants allege Aurora negligently delayed each of their respective modification reviews; and, second, appellants allege Nationstar violated California's Rosenthal Act by notifying each appellant his or her loan was being service transferred from Aurora to Nationstar.

Appellants' negligence-based claims fail even under the most generous analysis available. The district court correctly upheld the principle set forth in *Lueras v. BAC Home Loans Servicing, LP.* There, the California Court of Appeal held a residential lender does not owe a duty of care "to offer, consider, or approve a loan modification, or to explore and offer foreclosure alternatives." *Lueras v. BAC Home Loans Servicing, LP,* 221 Cal.App.4th 49, 63 (2013). Further support for the district court's holding is found through an analysis of the six-prong test set forth by the California Supreme Court in *Biakanja v. Irving,* 49 Cal.2d 647, 650 (1958). Moreover, even if this Court were to depart from the *Lueras* principles and find a duty exists, appellants have not alleged sufficient facts to establish breach.

Appellants' causes of action for violation of the Rosenthal Act and wrongful death are equally deficient. Nationstar's correspondence notifying appellants of the loan servicing transfer—required under the Real Estate Settlement Procedures Act

**RESPA**)[4]—was not an attempt to collect a debt. (EOR 1:12-14.) The district court also correctly dismissed the claim for wrongful death after determining there was no case "permitting a wrongful death claim rooted in a loan servicer's delayed and inappropriate processing of a loan modification to move past the pleading state." (EOR 1:15.) Appellants analogizing the facts of this action to those found in a series of cited homicide cases is not only appalling but also fails to present compelling grounds for reversal.

Appellees respectfully ask this Court to affirm the district court's rulings as well as the judgment entered in their favor.

## RELEVANT FACTS

### I.    Steve Burke

On August 8, 2005, appellant Steve Burke (**Burke**) refinanced his mortgage loan for $190,000.00. (EOR 3:403.) In May 2008 Burke's business as a contractor "was directly affected by the housing slow down," making it difficult for him to make his monthly mortgage payments. (EOR 3:404.) According to the fourth

---

[4] Codified in 12 U.S. Code section 2605(c), RESPA requires "transferee servicer[s] to whom the servicing of any federally related mortgage is assigned, sold, or transferred" to notify "***the borrower*** not more than ***15 days*** after the effective date of transfer" of any such assignment, sale or transfer. (Emphasis added.) The statute plainly contemplates specific exceptions under subsections (c)(2)(B) and (c)(2)(C), but none excuse the transferee servicer (in this case, Nationstar) from providing notification directly to the borrower in cases where the borrower is in active litigation with the former servicer (at the time the notice was sent litigation was only pending against Aurora).

amended complaint, Aurora sent Burke a notice advertising programs to save his home. *Id*. Burke alleges he called the number provided on the notice and was told he qualified for a loss mitigation program but that he had to first miss three mortgage payments. *Id*. Burke does not allege when he made the telephone call or who at Aurora gave him this information.

Shortly following the call, Burke alleges Aurora sent him a letter informing him his loan "may qualify for a loan modification." *Id*. In the letter, Aurora informed Burke "[d]epending upon your current financial situation, it may be possible for us to offer you one or more of the following programs that will avoid the loss of your home through foreclosure or further impairment on your credit…." (Appellees' Excerpt of Record (**AEOR**) 13-15.) The letter further stated, "upon receipt of this information, we [i.e., Aurora] will review it to determine what assistance we may be able to offer you." *Id*. The letter concluded by warning Burke, "It is important to understand that contacting our office will not suspend your obligation to make your mortgage payments. Furthermore, we will continue all collection and foreclosure activity until a formal workout plan has been accepted by Aurora." *Id*. Burke never alleges he provided documents in accordance with the clear instructions of Aurora's written notice; instead, Burke states he simply proceeded to "miss his monthly mortgage payment so he would obtain a loan modification." (EOR 3:405.)

9

The only information Burke alleges he sent to Aurora concerns a "Workout Agreement," which, according to the acknowledgement letter, was different from a loan modification. (EOR 3:405.) The Workout Agreement requested "an initial payment of $1,500.00 and two more payments of $1,790.00 per month with a balloon payment at the end that he could not pay." *Id*. The Workout Agreement or "Special Forbearance Agreement" clearly indicated Aurora's approval of Burke for this loss mitigation option was "*conditional upon Aurora verifying the information*" he provided. (AEOR 20.) Aurora agreed to refrain from foreclosing in exchange for Burke making the payments under the agreement. (AEOR 27.) The agreement notified Burke making all payments under the agreement could bring his loan current, *but the agreement did not promise Burke a loan modification*. (AEOR 27-28.) According to Burke, he made all payments under the agreement but the $13,574.50 balloon payment. (EOR 3:405.) Crucially, Burke does not allege he submitted any documents to Aurora for verification of the financial information he provided.

Burke received a second Workout Agreement in April 2009, similar to the first one, which called for three lesser payments of $837.00, and a balloon payment of $17,093.83. (EOR 3:405.) Burke admits he could not make the last payment of $17,093.83 and again does not allege he submitted the necessary documents to allow Aurora to verify the information he provided. *Id*.

10

On December 26, 2009, Burke learned he *may* qualify for a "Home Affordable Modification Trial Period Plan" (**HAMP TPP**). (EOR 3:405; AEOR 43.) The HAMP TPP required Burke to make three payments of $868.01 *and* to submit documents to permit verification of his income. (AEOR 48.) The HAMP TPP warned "the Loan Documents will not be modified and this Plan will terminate if" Burke failed to timely submit payments or the necessary documents to verify his income and in such event the payments would be applied to the loan and not refunded. (AEOR 49, ¶ F.) Burke alleges he made the required three payments in February, March and April 2010, *but does not indicate whether he timely submitted the necessary documents to verify his income as required under the HAMP TPP.* (EOR 3:406.)

Aurora offered Burke a third Workout Agreement in May 2010, which required Burke make six payments of $1,197.00, and to submit certain financial documentation to support Burke's request for a loan modification. (AEOR 70.) The agreement specifically stated "[t]ender of the Sixth Plan payment shall not be deemed acceptance by Aurora Loan Services of a workout plan or loan modification." (*Id.* ¶ a.2.) Burke contends he made the six payments (EOR 3:406), *but does not allege he submitted the required financial documentation to be considered for a loan modification.* Ultimately, Burke was denied a permanent loss mitigation option because Aurora did not receive the necessary financial

11

documents. (AEOR 73-74.) The decline letter warned Burke foreclosure would ensue. *Id.*

On July 15, 2012, Burke received a three-page Notice of Assignment, Sale, or Transfer of Servicing Rights (the **Notice**) from Nationstar. (EOR 3:362 and EOR 3:386.) Nationstar sent the Notice to notify Burke it had acquired the servicing rights to his home loan pursuant to RESPA and to validate the debt, as required by 15 U.S.C. § 1692g(a) (also known as the Fair Debt Collection Practices Act and hereinafter referred to as the **FDCPA**). *Id.*

## II.    Richard Apostolos

On August 6, 2007, Apostolos refinanced his mortgage loan for $492,300.00. (EOR 3:407.) Apostolos made payments on the loan until 2009 when the construction industry business dried up due to the "national housing crisis and the crash of the economy." (EOR 3:407-408.) According to the fourth amended complaint, Aurora sent Apostolos a notice advertising programs to save his home. (EOR 3:408.) Apostolos alleges he called the number provided on the notice and was told he qualified for a loss mitigation program but that he had to first miss three mortgage payments. *Id.* Like Burke, Apostolos does not allege when he made the telephone call or who at Aurora gave him this information.

Following the call, Aurora sent Apostolos a follow-up letter. (EOR 3:408.) The letter stated he "may qualify for a loan modification" but that he must "provide

12

documents to support [his] inability to reinstate the mortgage loan…." *Id.*
Apostolos alleges he "refused to miss the three monthly mortgage payments" and
Aurora denied him a HAMP review. *Id.* Apostolos struggled to make his
payments but eventually defaulted. *Id.*

In August 2009, Aurora offered Apostolos a HAMP TPP following his
default. (AEOR 76.) The HAMP TPP required Apostolos to make three payments
of $1,844.32, and to submit documents to permit verification of his income.
(AEOR 77.) The HAMP TPP warned "the Loan Documents will not be modified
and this Plan will terminate if" Apostolos failed to timely submit payments or the
necessary documents to verify his income, and any payments would be applied to
the loan and not refunded. (*Id.* at 82, ¶ F.) Apostolos does not allege he made the
required three payments in October, November and December 2009, or if he timely
submitted the necessary documents to verify his income as required under the
HAMP TPP.

Aurora offered Apostolos another HAMP TPP in August 2010, which
contained the same disclaimer language. (EOR 3:409.) Apostolos alleges he made
all six payments due under the 2010 HAMP TPP, *but again does not allege he
submitted the required financial documentation*. *Id.* In January 2011, Apostolos
was ultimately denied a modification due to his failure to submit all necessary
documents. (EOR 3:410; AEOR 97.) Despite the fact the property was sold,

Apostolos alleges he received the Notice from Nationstar on July 15, 2012, identical to that received by Burke.  (EOR 3:365 and EOR 3:386.)

## III.    Joanne Anderson

On July 26, 2007, Anderson obtained a $650,000.00 loan, secured by a deed of trust recorded against her property.  (EOR 3:410.)  Anderson made payments on the loan until 2009 when she and her partner (both realtors) "lost their major client [] during the housing market crash."  (EOR 3:411.)

According to the fourth amended complaint, Aurora sent Anderson a notice advertising programs to save her home.  (EOR, 3:411.)  Anderson alleges she called the number provided on the notice and was told she qualified for a loss mitigation program but that she had to first miss three mortgage payments.  *Id*. Anderson does not allege when she made the telephone call or who at Aurora gave her this information.  Shortly following the call, Anderson alleges Aurora sent her a letter informing her loan "may qualify for a loan modification" but that she would be required to "provide documents to support [her] inability to reinstate the mortgage loan in one lump sum."  *Id*.  Anderson never alleges she provided documents in accordance with the clear instructions of Aurora's written notice; instead, Anderson simply states "no [trial payment plan] followed."  *Id*.

Anderson received a HAMP TPP in December 2009.  (EOR 3:412; AEOR 105.)  The HAMP TPP required Anderson to make three payments of $1,988.00,

and to submit documents to permit verification of her income. (AEOR 106.) The HAMP TPP warned "the Loan Documents will not be modified and this Plan will terminate if" Anderson failed to timely submit payments or the necessary documents to verify her income, and that the payments would be applied to the loan and not refunded. (*Id.* at 111, ¶ F.) Anderson alleges she made the required three payments in January, February and March 2010 (EOR 3:412), *but does not indicate whether she timely submitted the necessary documents to verify her income*.

Aurora subsequently offered Anderson a Workout Agreement in June 2010 requiring Anderson to make six payments of $1,287.83 and to submit certain financial documentation after she made the second plan payment to support Anderson's request for a loan modification. (EOR 3:413; AEOR 131.) The agreement specifically stated "[t]ender of the Sixth Plan payment shall not be deemed acceptance by Aurora [] of a workout plan or loan modification." (AEOR 131, ¶ a.2.) Anderson contends she made the payments "as requested under the plan," (EOR 3:413), but does not allege whether she submitted the required financial documentation.

While Anderson was making her payments under the June 2010 Workout Agreement, she contends she received a letter of "assurance" from Aurora "which encouraged her to keep sending payments while facing imminent foreclosure…."

(EOR 3:412; AEOR 137.) This letter acknowledged Anderson had "successfully made several payments" under the agreement and indicated Aurora "would like to offer [her] "a more permanent home retention option." *Id*. What Anderson conveniently fails to acknowledge, however, is that the letter also stated Aurora needed additional information "[i]n order to review [her] loan for a more permanent option." *Id*. Anderson does not allege whether she provided Aurora with the requested documents, but contends she continued to make lesser monthly payments. (EOR 3:413.)

In December 2010, shortly after she made her November 2010 payment under the June 2010 Workout Agreement, Aurora informed Anderson she did not qualify for a loan modification. (AEOR 140.) The decline letter warned Anderson foreclosure would ensue. *Id.*

On July 15, 2012, Anderson received the Notice from Nationstar, which was identical to those received by Burke and Apostolos. (EOR 3:369 and EOR 3:386.) Nationstar sent the Notice to notify Anderson it had acquired the servicing rights to her home loan pursuant to RESPA and to validate the debt, as required under the FDCPA. *Id*.

## IV.   Angela Brown

On November 30, 2006, Brown obtained a $412,000.00 loan on her property. (EOR 3:420.) She made payments on the loan until 2009 when she

16

"experienced an extended but temporary hardship because her work days and hours at the DMV were cut." *Id*. Brown alleges she called Aurora to inquire about a loan modification, and that Aurora "took her financial information over the phone" and told her "she qualified for a loan modification under HAMP but that first she had to miss three mortgage payments." *Id*. Brown does not allege with whom she spoke, or when the representation was made, but contends she received a letter confirming the call. *Id*. The letter stated Brown "may qualify for a loan modification" but that she must "provide documents to support [her] inability to reinstate the mortgage loan…." *Id*. Brown alleges she missed the three payments to qualify for a loan modification, but she never states whether she submitted the requested documents in order to be considered for a modification. (EOR 3:421.)

In April[5] of 2009 Aurora sent Brown a Workout Agreement. (EOR 3:421; AEOR 149.) The agreement clearly indicated Aurora's approval of Brown for the loss mitigation option was "conditional upon Aurora verifying the information" she provided. (*Id*.) Under the agreement, Aurora agreed to refrain from foreclosing in exchange for Brown making an initial installment of $1,237.83, two consecutive payments of $1,237.83 and a final balloon payment of $12,132.37 to cure the arrearage. (AEOR 156, ¶ a.1.) The agreement notified Brown making all payments under the agreement could bring her loan current, but the agreement *did*

---

[5] Brown alleges the Workout Agreement was dated May 2009.

*not promise or guarantee* her a loan modification. (AEOR 156, ¶ b.) According to Brown, she made the three payments of $1,237.00 (EOR 3:421), but she does not allege whether she made the $12,132.37 balloon payment or if she submitted any documents to Aurora for verification of the financial information she provided. On August 4, 2009, Aurora sent Brown a letter denying her loss mitigation assistance because it determined she was unable to afford monthly payments on her loan. (AEOR 160.)

On July 15, 2012, Brown received the Notice from Nationstar, identical to those received by Burke, Apostolos, and Anderson. (EOR 3:373 and EOR 3:386.) Nationstar sent the Notice to notify Brown it had acquired the servicing rights to her home loan pursuant to RESPA and to validate the debt, as required under the FDCPA. *Id.*

## STANDARDS OF APPELLATE REVIEW

### I.    District Court's Holding on Motion to Dismiss Reviewed *De Novo*

This Court reviews a district court's order granting a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) *de novo*. *See AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012); *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). This Court may affirm the dismissal "on any ground supported by the record." *Thompson v. Paul*, 547 1055, 1058-59 (9th Cir. 2008) (internal citations omitted). This Court may even affirm

18

the decision based on grounds that were raised but not decided by the lower court. *Johnson v. Wells Fargo Home Mortg., Inc.*, 635 F.3d 401, 421 (9th Cir. 2011).

To survive dismissal for failure to state a claim, a complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level" and establish a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

Dismissal with prejudice is proper if "it is clear that the complaint could not be saved by any amendment." *Livid Holdings, Ltd. v. Solomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). This Circuit has found it proper to deny leave to amend when a plaintiff has had multiple opportunities to amend her complaint, but each time fails to correct the deficiencies in the previous complaints. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009). When a party has had multiple chances to correct deficiencies, there is a "strong indication that the plaintiffs have no additional facts to plead." *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1098 (9th Cir. 2002). In cases where the deficiencies persist in nearly every prior iteration of the complaint, it is proper for the court to deny plaintiffs leave to amend. *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1072 (9th Cir. 2008).

///

///

19

## II. Issues Not Raised Below Should Not Be Considered On Appeal

Whether the Court has subject matter jurisdiction over a dispute will be reviewed *de novo*. *See*, *e.g.*, *King County v. Rasmussen*, 299 F.3d 1077, 1088 (9th Cir. 2002); *Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1163 (9th Cir. 2002). The Court "may affirm on any ground fairly presented by the record." *Meyer v. Ameriquest Mortg. Co.*, 342 F.3d 899, 902 (9th Cir. 2003). Arguments not raised below are waived on appeal. *O'Guinn v. Lovelock Correctional Center*, 502 F.3d 1056, 1063 fn.3 (9th Cir. 2007).

Although the Court has discretion to consider issues or law raised for the first time on appeal, *In re Am. W. Airlines, Inc.*, 217 F.3d 1161, 1165 (9th Cir. 2000), it is unusual for it to do so before the district court has had an opportunity to consider it and to develop the record. *See U.S. v. Bushyhead*, 270 F.3d 905, 910 n.2 (9th Cir. 2001); *see also U.S. v. McDonald*, 178 F.Appx.643, 645 (9th Cir. 2006) (declining to consider issue raised for first time on appeal); *Myers v. Merrill Lynch & Co.*, 249 F.3d 1087, 1088 (9th Cir. 2001); *U.S. v. Etsitty*, 130 F.3d 420, 425 (9th Cir. 1997) ("In the absence of factual support in the record, assertions made in briefs simply do not suffice.").

///

///

///

20

# ARGUMENT

## I. The District Court Properly Dismissed Appellants' Negligence-Based Claims Based on its Determination Neither Aurora nor Nationstar Owed Appellants a Duty of Care

Despite appellants' lengthy discussion as to why federal preemption does not preclude their negligence-based causes of action, a simple reading of the December 18, 2013 order reveals the district court dismissed the negligence and negligence-predicated claims due to it finding neither Aurora nor Nationstar owed appellants a duty of care.[6] While appellees acknowledge the depublication of *Aspiras v. Wells Fargo Bank, N.A.*, 219 Cal.App.4th 948 (2013), partially relied upon by the district court in its December 2013 order, the standing principles set forth in both *Lueras* and *Biakanja* warrant affirmation of the order dismissing appellants' negligence-based claims.

To establish a negligence claim, plaintiffs must allege: "(1) the duty of the defendant with respect to the injured person's injury; (2) the violation of that duty;

---

[6] In its Order, the district court held, "Plaintiffs' negligence claim is not preempted by federal law." (EOR 1:61.) The Court went on to state appellants' claims for violations of Cal. *Bus & Professions Code* §§ 17200 and 17500 would likely be preempted, but that the ultimate disposition of any such argument is "unimportant because [] the Court dismisses the negligence claim and other claims predicated on the negligence claim with prejudice on other grounds." (EOR 1:64.) And, as the district court clarified just a couple pages prior, "plaintiffs' §§17200 and 17500 claims, and their aiding and abetting claim, are predicated on the negligence issue left open by the Ninth Circuit's mandate." (EOR 1:60.)

(3) the causal relation between the defendant's conduct and the injury suffered; and (4) the plaintiff's loss, i.e., damages." *Premo v. Grigg,* 237 Cal.App.2d 192, 195 (1965). "The threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion." *Quelimane Co. v. Stewart Title Guaranty Co.,* 19 Cal.4th 26, 57 (1998). A complaint lacking in facts to show a duty of care was owed is therefore fatally defective. *Peter W. v. San Francisco Unified School Dist.,* 60 Cal.App.3d 814, 820 (1976).

California has long recognized the general view that each party is entitled to act in its own best interest in commercial transactions. *See Das v. Bank of America*, 186 Cal.App.4th 727, 740-41 (2010) ("A commercial lender is not to be regarded as the guarantor of a borrower's success and is not liable for the hardships which may befall a borrower. It is simply not tortious for a commercial lender to lend money, take collateral, or to foreclose on collateral when a debt is not paid.") Following this principle, countless California courts have repeatedly found a financial institution generally owes a borrower no duty of care. *See Nymark v. Heart Fed. Savings & Loan Ass'n*, 231 Cal.App.3d 1089, 1096 (1991). As the *Lueras* court recently explained, lenders and borrowers operate at arm's length such that no duty attaches when the lender's involvement in the transaction does not exceed the scope of its conventional role as a mere lender of money. *Lueras v.*

*BAC Home Loans Servicing, LP,* 221 Cal.App.4th 49, 64 (2013) (citing *Oaks Mgmt. Corp. v. Superior Court,* 145 Cal.App.4th 453, 366 (2006); *Union Bank v. Superior Court,* 31 Cal.App.4th 573, 579 (1995); *Nymark,* 231 Cal.App.3d at 1096 and various other cases). Most pertinent to the specific facts of this appeal, the *Lueras* court cited a host of decisions confirming no duty of care arose in the context an attempted loan modification as modification. *Lueras,* 221 Cal.App.4th at 64 ("A loan modification…is nothing more than a renegotiation of loan terms. This renegotiation is the same activity that occurred when the loan was first originated…For this reason, numerous cases have characterized a loan modification as a traditional money lending activity.") (citing *Ragland v. U.S. Bank Nat 'I Ass'n*, 209 Cal.App.4th 182, 208 (2012); *Armstrong v. Chevy Chase Bank, FSB,* No. 5:11-cv-05664, 2012 WL 4747165 (N.D. Cal. Oct 3, 2012); *Diunugala v. JPMorgan Chase Bank, N.A.,* No. 12cv2106-WQH-NLS, 2013 WL 5568737 (S.D. Cal., Oct. 3, 2013); *Sanguinetti v. CitiMortgage, Inc.,* No. 12-5424 SC, 2013 WL 4838765 (N.D. Cal., Sept. 11, 2013) and various other cases).

Both the 4AC and the opening brief fail to meaningfully address why this Court should abandon the *Lueras* principle or why the district court erred in upholding it. Appellants gloss over both the depublication of *Aspiras* (Opening Brief, 15) and the August 7, 2014 ruling in *Alvarez v. BAC Home Loans, LLP*, 228 Cal.App.4th 941 (2014), where the California Court of Appeal held a borrower

23

may be able to bring a negligence claim against a loan servicer based on an alleged mishandling of a modification review (Opening Brief, 24). At no point do they explain why depublication of *Aspiras* should alter the tide of California jurisprudence as to whether lenders owe borrowers a duty of care nor do they endeavor to allege how or why *Alvarez* is analogous to the facts of each appellant's individualized situation.

Instead, appellants' stream of consciousness appears to invite this Court to reconsider their overbroad analysis of the six-factor test outlined in *Biakanja v. Irving*, and reiterated in *Nymark*, to determine whether Aurora or Nationstar owed a duty of care. Appellants cite nothing in the 4AC nor do they provide support showing the *Biakanja* test was satisfied in their original pleadings—the content of which is the very subject of this appeal.

### A.    The *Biakanja* Factors Do Not Support a Finding of a Duty of Care

*Lueras* makes clear loan servicers owe no duty of care in the context of a loan modification independent of any further analysis. If, however, the Court deems an examination of the six-prong test espoused in *Biakanja* is required, the facts as alleged continue to weigh in appellees' favor. The *Biakanja* factors are: (1) the extent to which the transaction was intended to affect appellants, (2) the foreseeability of harm, (3) the degree of certainty as to whether appellants suffered injury, (4) the closeness of the connection between the appellees' conduct and the

24

injury suffered, (5) the moral blame attached to the appellees' conduct, and (6) the policy of preventing future harm. *See Nymark,* 231 Cal.App.3d at 1098 (quoting *Biakanja v. Irving,* 49 Cal.2d 647, 650 (1958)).

The first factor outlined by the *Biakanja* court, the "extent to which the transaction was intended to affect the plaintiff," weighs in favor of appellees having no duty. The 4AC contains no assertions to support this element swaying in appellants' favor. To the contrary, the 4AC includes conflicting and conclusory allegations asserting appellees did not intend for the modification process to assist appellants, but rather engaged in the review for their own financial benefit. (EOR 3:399-403.) What's more, when stripped of its inflammatory language, the 4AC's understanding of the purpose of a modification review process is not entirely inaccurate. As explained by the California legislature, the role of a loan servicer is to maximize the loan owner's return, on whose behalf it is charged to act. *See Cal. Civ. Code* § 2920.5(a). This was specifically discussed in the original complaint, wherein appellants' discussed HAMP's emphasis on the net present value calculation. (EOR 5:643.) Appellants agree a modification is offered only if the lender's anticipated return under the modification—measured as the net present value—exceeds its anticipated recovery through foreclosure. [7] (EOR 5:643-644.)

---

[7] As explained by the Department of the Treasury and the Department of Housing and Urban Development: "NPV stands for net present value, a calculation which indicates how much an investment, such as a bond or a mortgage, is worth

As a result, while modifications can provide crucial assistance to borrowers when eligibility requirements are met, appellants cannot allege a borrower is the intended beneficiary of the loan servicer's review process.

As to the foreseeability of harm, each appellant suffered as a result of his or her own default, not because Aurora or Nationstar allegedly failed to conduct proper modification reviews. As alleged in the 4AC, each appellant—Burke, Apostolos, Anderson and Brown—unfortunately defaulted on his or her loan obligations following circumstances entirely outside appellees' control and which had no relation to appellees' modification reviews. At most, appellants allege appellees could have helped by providing a permanent home retention program and conducting a quicker modification review.[8] (EOR 3:438.) And, without any clear

today. If investors are faced with multiple choices for investments, they generally prefer the investment with the higher calculated NPV. When deciding whether to modify a mortgage, investors will choose the option with the higher NPV, either the mortgage modified or left "as is" [i.e. in default]. For the HAMP program, servicers compare the NPV of the mortgage with a HAMP modification to that of the mortgage left "as is." If the NPV with the modification is higher than, or within a specified range of, the NPV of the mortgage without the HAMP modification, HAMP servicers are required to provide the HAMP modification for eligible mortgages (subject to investor restrictions)." *See*: United States Department of the Treasury and the

.

[8] Notably, not once do appellants allege they were in fact qualified for a permanent modification or that they provided proper documentation to appellees throughout the course of their modification reviews. At the same time, appellants fail to recognize a quicker review—without any assertion they were entitled to a

allegation asserting appellants were in fact qualified for modifications, there can be no foreseeability of harm from a purportedly flawed modification review. Even if errors occurred (which they did not), there would be no resulting harm without each appellant first being qualified for a loan modification—a fact never alleged.

The third factor, the degree of certainty of injury, fares no better. At most, a loan servicer's negligent processing of a modification application may deprive the borrower of a chance for a modification. This cannot be deemed an injury to appellants without any requisite showing they were individually entitled to modifications and would have received them notwithstanding appellees' purportedly negligent handling of their reviews. Appellants cannot make any such allegation as appellees had no statutory duty under California law to give any of the appellants a loan modification. See *Nastrom v. JPMorgan Chase Bank, N.A.*, No. 1:11cv01998 DLB, 2012 WL 5522795, *6 (E.D. Cal. Nov. 14, 2012) ("In California, lenders do not have a statutory duty to agree to a mortgage loan modification.").

---

permanent renegotiation of terms, coupled with the fact appellants failed to provide all the necessary documents requested by Aurora—would have simply resulted in a quicker denial and therefore quicker foreclosure. Their conclusory allegations of "delay" miss the point. Appellants were each able to stay in their homes longer because of the pending modification reviews, each of which were voluntarily undertaken despite clear disclaimers warning a permanent modification was not guaranteed.

The "closeness of the connection between the defendant's conduct and the injury suffered" similarly weighs in favor of no duty. "If the modification was necessary due to the borrower's inability to repay the loan, the borrower's harm, suffered from denial of a loan modification, would not be closely connected to the lender's conduct." *Lueras,* 221 Cal.App.4th at 67. Here, each appellant admitted suffering from financial difficulties which caused them to default on their loans. This directly impacted the risk and likelihood of foreclosure as called for under each appellant's original deed of trust. Foreclosure was proximately caused each appellant's inability to comply with his or her repayment obligations. Neither the denial of a modification nor the length of the modification review were closely connected to appellants to default or subsequent foreclosure.

*Lueras* explains, "If the lender did not place the borrower in a position creating a need for a loan modification, then no moral blame would be attached to the lender's conduct." *Lueras*, 221 Cal.App.4th at 67. Contrary to *Alvarez*, 228 Cal.App.4th at 949 and the newly raised claims and theories in appellants' opening brief, moral blame cannot properly attach to a mere negligent handling of a loan modification application or evaluation, even if the borrower is unable to protect his or her own interests. Moral blame arises from the nature of the conduct, not from the circumstances of its supposed victim. Further, in circumstances such as those alleged here, the Court cannot impart moral blame on appellees for not providing

permanent modifications without any allegations suggesting appellants complied with the requirements of the modification application and were otherwise qualified for a modification.

Finally, the sixth factor, "the policy of preventing future harm," also weighs against finding a duty. The Homeowner's Bill of Rights and other laws now govern procedures for loan modification reviews, obviating any necessity to make an example of appellees, especially given the bare and vaguely alleged factual claims asserted by appellants. See *Alvarez*, 228 Cal.App.4th at 951 ("Much of the conduct that plaintiffs allege breached a duty of care in this case-failing to process the applications in a timely manner, dual tracking and losing documents-is conduct now regulated by the HBOR.").

### B. Assuming *Arguendo* Appellees Owed a Duty of Care, Appellants Fail to Allege a Breach of Any Such Duty

Assuming *arguendo* a duty exists, appellants fail to show how it was breached by appellees. Even under the *Alvarez* ruling, to assert a negligence cause of action based on an improper loan modification review, one must still allege he or she was "qualified to receive and would have received" a loan modification but for appellees' mishandling of the modification review. *Alvarez,* 228 Cal.App.4th at 951; see also *Guillermo v. Caliber Home Loans, Inc.*, No. C 14-04212 JSW, 2015 WL 1306851, *6 (N.D. Cal. March 23, 2015) ("In cases where courts have found the facts sufficient to show a lender owed a borrower a duty of care, the claims

generally have not been based on a theory that the lender was required to approve a modification. Rather, the borrowers have alleged that the lender or servicer mishandled a loan modification application.").

The plaintiff-borrowers in *Alvarez* alleged the defendant-lender/servicer "breached [its] duty by (1) failing to review plaintiffs' applications in a timely manner, (2) foreclosing on plaintiffs' properties while they were under consideration for a HAMP modification and (3) mishandling plaintiffs' applications by relying on incorrect information." *Id*. at 945. *Alvarez* is additionally inapposite because there plaintiffs expressly alleged, with specific and sufficient facts, they would have qualified for a modification if not for defendant's mishandling of their applications. *Id*. at 951 ("Plaintiffs [] alleged that the improper handling of their applications deprived them of the opportunity to obtain loan modifications, which they allege they were qualified to receive and would have received had their applications be properly reviewed.") Appellants make no such allegations.

The conduct alleged falls far short of those alleged against the loan servicer in *Alvarez*. Instead, appellants simply claim the modification reviews took an extended period of time and were not handled in a way to prevent foreclosure and the forfeiture of their properties—which appellees are not legally obligated to do. See *Stiles v. Wells Fargo Bank*, No. C-14-04169 DMR, 2014 WL 7146950, *6 (N.D. Cal. Dec. 15, 2014) citing *Lueras*, 221 Cal.App.4th at 68 ("[L]ender does not

30

have a 'duty of care to handle [the borrower's] loan in such a way to prevent foreclosure and forfeiture of [the] property.").  At the same time, appellants do not allege whether or not they were actually compliant with appellees' documents requests to facilitate a review.  (EOR 1:67.[9])  Even assuming the allegations against Aurora and Nationstar to be true, this conduct does not rise to the level of "mishandling" admonished by the Court in *Alvarez*.  In fact, *nothing* alleged by appellants—in *any* of their *six* complaints—suggests appellees mishandled any documents during the application process, lost any applications, made any material misrepresentations about what they did with the applications or otherwise relied in incorrect information to demonstrate a breach of any purported duty.

### C.    Appellants' Negligence-Based Claims are Preempted

In addition to the insurmountable factual deficiencies, appellants' negligence-based theories are further barred because they are preempted by federal law.  In general, federal law preempts state law "when federal regulation in a particular field is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it."  *Bank of Am. v. City & Cnty. of S.F.*, 309 F.3d 551, 558 (9th Cir. 2002); *see also Rice v. Santa Fe Elevator*, 331 U.S. 218, 230 (1947) ("[T]he historic police powers of the States are not to be

---

[9] As the Court pointed out in its December 18, 2013 Order, "Nowhere do Plaintiffs allege that the required documents were in fact submitted."

superseded by [a federal law] unless that was the clear and manifest purpose of Congress.").

During the lifetime of appellants' loans, the Home Owner's Loan Act, 12 U.S.C. §§ 1461, *et seq.* (**HOLA**)[10] operated specifically to preempt the entire field of lending regulation.  12 C.F.R. § 560.2(a); *Silvas v. E*Trade Mortg. Corp.*, 514

---

[10] Under Title III of Dodd-Frank, all functions of the Office of Thrift Supervision (**OTS**) relating to federal savings associations and the rulemaking authority of the OTS relating to all savings associations were transferred to the Office of the Comptroller of the Currency (**OCC**) as of July 21, 2011 (**transfer date**).  OCC issued an interim final rule renumbering and reissuing former OTS regulations.  Dodd-Frank contains significant changes to the preemption standards applicable to federal savings associations, as well as changes to the preemption standards applicable to national banks.  However, Dodd-Frank's changes to the preemption standards did not become *effective* until the transfer date in July 2011.  *See* Dodd-Frank Act, at Section 1048 (making the new preemption law effective on the "designated transfer date"); 75 Fed. Reg. 57252 (Sept. 20, 2010).  Since the alleged wrongdoings took place <u>before</u> the transfer date, they should be analyzed under the preemption rules in effect when the claims arose, *before* the Dodd-Frank changes became effective.  Dodd-Frank does not require retroactive application of the new preemption rules.  Courts that have considered this issue have found that contracts such as loan agreements drafted prior to the effective date of the Act are governed by the laws in place prior to its enactment.  *See Haggarty v. Wells Fargo Bank, N.A.*, No. C 10-02416 CRB, 2012 WL 4742815, at *3 n.2 (N.D. Cal. Oct. 3, 2012) (using *Silvas'* field preemption analysis to grant bank's summary judgment motion as to plaintiff's UCL claims because Dodd-Frank did not apply retroactively); *Settle v. World Savings Bank, F.S.B.*, No. ED CV 11–00800 MMM (DTBx), 2012 WL 6176905 (C.D. Cal. Jan. 11, 2012) (finding plaintiffs' UCL claims preempted under the old *Silvas* standard because the claims involved mortgage loans originated before July 21, 2010, making the Act inapplicable).  Indeed, § 1043 of Dodd-Frank calls for prospective application.  *See Williams v. Wells Fargo Bank, N.A.*, No. 11–21233–CIV, 2011 WL 4901346, at *7 n. 6 (S.D. Fla. Oct. 14, 2011) (applying preemption standard applicable to national banks before July 21, 2011 Dodd-Frank transfer date because claims arose prior to that date).

F.3d 1001, 1008 (9th Cir. 2008). Appellee Aurora—against whom all of appellants' alleged wrongful conduct is directed—is a wholly-owned direct subsidiary of Aurora Bank. Aurora Bank is a federally chartered bank; Aurora Loan Services, as its operating subsidiary, enjoys the same HOLA preemption rights. *See State Farm Bank, FSB v. Reardon*, 539 F.3d 336, 345 (6th Cir. 2008). As such, the mortgage acquisition and servicing operations of Aurora are subject to the comprehensive scheme of federal regulation set forth by HOLA and the regulations promulgated thereunder by the Office of Thrift Supervision (**OTS**). *See* 12 C.F.R. §560.2(b)(1)-(13) (providing examples of state laws preempted by HOLA).

The Ninth Circuit has adopted the OTS's general framework for analyzing whether HOLA preempts a state law. *Silvas*, 514 F.3d at 1005. The first step is to determine whether the state law at issue is among the types of laws identified in § 560.2(b) as expressly preempted. If so, the analysis will end there; the law is preempted. *Id.* at 1005. Section 560.2 lists thirteen categories of laws preempted by OTS regulations. As relevant here, § 560.2(b) states, "the types of state laws preempted by paragraph (a) of this section include, without limitation, state laws purporting to impose requirements regarding:… (10) Processing, origination, **servicing**, sale or purchase of, or investment or participation in, **mortgages**; . . ." *Id.* (emphasis added).

33

Appellants' negligence and negligence-based claims are based solely on loss mitigation assistance offered by Aurora. (EOR 3:437-437.) Loss mitigation is an ordinary loan servicing  activity and is expressly preempted by § 560.2(b)(10), which preempts all state law causes of action related to the "servicing . .. of . . . mortgages." *Hayes v. Wells Fargo Bank, N.A.*, No. 13-cv-0420 KAW, 2013 WL 4117050, at *5-6 (N.D. Cal. Aug. 12, 2013) (citing *Biggins*, 266 F.R.D. at 417 (finding borrower's UCL claim was preempted under HOLA to the extent it contained allegations related to a servicer's loan modification efforts) and *DeLeon v. Wells Fargo Bank, NA*, 729 F. Supp. 2d 1119 (N.D. Cal. 2010); *Marshall v. Wells Fargo Bank*, No. C–13–01747 EDL, 2013 WL 3287687, at *6 (N.D. Cal. June 27, 2013) ("Challenges to a bank's procedures concerning the loan modification process" are preempted pursuant to 12 C.F.R. § 560.2(b)(10)).

## II. The District Court Properly Dismissed Anderson's Claim for Wrongful Death

To state a claim for wrongful death, a plaintiff must establish "(1) a 'wrongful act or neglect' on the part of one or more persons that (2) 'cause[s]' (3) the 'death of another person. " *Norgart v. Upjohn Co.*, 21 Cal.4th 383, 390 (1999) (quoting Cal. *Code Civ. Proc.* § 377.60). In the 5AC, appellant Anderson alleges Aurora wrongfully caused the death of Elliot Berd, her non-borrower domestic partner, by "inducing [Anderson] to default" and by "unreasonably delaying the modification process" on Anderson's loan. (EOR 3:376.) Anderson does not clearly allege

34

whether it was a "wrongful act" by Aurora that resulted in Mr. Berd's death, nor does she provide any facts to imply Aurora engaged in any wrongful act or tort other than negligence. (EOR 3:376.) Instead, the opening brief states Aurora or Nationstar "should have known that Mr. Byrd [*sic*] was certain to die because his physical state was not one that could endure [] long term stress." (Opening Brief, 43.) This allegation is preposterous.

Despite the conclusory claim Aurora "should have known" the certainty of Mr. Berd's death, Anderson claims Aurora continued to withhold a loan modification, which—according to Anderson—is tantamount to "homicide." (Opening Brief, 43.) Anderson attempts to support this egregious and inappropriate claim with references to a series of irrelevant criminal cases. Anderson even goes so far as to state "Wells Fargo"—who is not named in this suit and never has been—"does not need to be the killer to be guilty of murder," a bold assertion which serves to imply Aurora or Nationstar should be found culpable for the murder of Mr. Berd. (Opening Brief, 46.) There are, however, no criminal or homicide charges being brought against Aurora or Nationstar in connection with Mr. Berd's death and Anderson's flagrant and unconscionable suggestions otherwise should be ignored by this Court. Nor is Mr. Berd's death, albeit unfortunate, a viable basis for any civil or criminal claims against Aurora or Nationstar.

35

Notwithstanding Anderson's deplorable suggestion appellees murdered her partner, her wrongful death claim is further defective inasmuch as it is predicated on negligence or any other tortious conduct. *Id.* The term "wrongful act" as used within section 377.60 can mean any type of tortious act, including acts of willful or intentional misconduct. *Barret v. Superior Ct.*, 222 Cal.App.3d 1176, 1191 (1990). When a plaintiff brings a wrongful death claim resulting from negligence, *it is her obligation to plead each and every element of a claim for negligence. Jacoves v. United Merchandising Corp.*, 9 Cal.App.4th 88, 105 (1992) (citing *Potter v. Richards*, 132 Cal.App.2d 380, 385 (1955)) (emphasis added). As detailed above, to establish a claim for negligence, a plaintiff must plead "(1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate [or legal] cause between the breach and (4) the plaintiff's injury." *Mendoza v. City of L.A.*, 66 Cal.App.4th 1333, 1339 (1998); *Jacoves*, 9 Cal.App.4th at 105 (citing *Potter*, 132 Cal.App.2d at 385)). A plaintiff additionally must have suffered pecuniary damages from the loss. *Quiroz v. Seventh Ave. Center*, 140 Cal.App.4th 1256, 1263 (2006).

Anderson does not and cannot establish Aurora owed her a legal duty, let alone that the violation of any such duty caused Mr. Berd's death. What's more, the 5AC does not allege any purported duty Aurora owed Mr. Berd specifically, a non-borrower whose only connection to the Aurora was through his relationship with Anderson. (EOR 3:376.) The most Anderson asserts to tie Aurora to Mr.

Berd is the fact Aurora considered Mr. Berd's income "from his pension, social security and part time jobs as part of the loan modification process" when evaluating Anderson's application, and that he was "very involved in the loan modification process." (EOR 3:376.) This, however, is not enough to establish a duty of care. *See Jacoves*, 9 Cal.App.4th at 105 (citing *Potter*, 132 Cal.App.2d at 385)).[11]

## III. The District Court Properly Dismissed Appellants' Rosenthal Act Claim

In their 5AC, appellants introduced a claim alleging violations of the Rosenthal Fair Debt Collection Practices Act (the **RFDCPA**) against Nationstar, *Cal*. *Civ*. *Code* §§ 1788.10-1788.18. (EOR 3:377-381.) Appellants allege Nationstar violated provisions of the RFDCPA by sending a Notice of Assignment, Sale, or Transfer of Servicing Rights to each appellant, as well as by sending each appellant a debt validation notice and a statement in the same envelope. (*See id.*)

Appellants allege Nationstar violated the RFDCPA by mailing out debt validation letters overstating and disguising the amount due in an attempt to collect charges it was not legally permitted to collect and, where applicable, by failing to

---

[11] Conversely, if it accepts Anderson's theory, the Court risks setting precedent designating a new protected class of individuals and requiring a new set of criteria for loan servicers to consider in the course of a loan modification review. This criteria would encumber loan servicers to inquire, determine and verify the health condition of borrowers as well as non-borrower tenants or partners. Not only is such a requirement unduly burdensome, it presents a host of privacy considerations as well as the potential for chilling modification reviews.

acknowledge whether the debt had been discharged in bankruptcy. (EOR 3: 378.)

These claims fail because "a loan servicer is not a debt collector under [the RFDCPA]." *See, e.g., Lal v. Am. Home Servicing, Inc.*, 680 F.Supp.2d 1218, 1224 (E.D. Cal. 2010); *Nool v. Home Servicing*, 653 F.Supp.2d 1047 (E.D. Cal. 2009). In *Lal*, the court had previously held "while loan servicers cannot be held liable under the Federal Fair Debt Collection Practices Act (**FDCPA**), they can be held liable under California's RFDCPA." 680 F.Supp.2d at 1224. The *Lal* court, however, *reversed its position* and held the RFDCPA does in fact mirror the definition of debt collector in the FDCPA. *Id.* More specifically, the court held the intent behind both the RFDCPA and the FDCPA were the same "and, as such, *a loan servicer is not a debt collector under these acts*." *Id.* The *Nool* court, as well as others, have reached the same result. 653 F.Supp.2d at 1053.; *see also Olivier v. NDEX West*, LLC, No. 1:09–CV–00099 OWW GSA, 2009 WL 2486314, at *3 (E.D. Cal. Aug. 10, 2009); *Cordova v. Am.'s Servicing Co.*, No. C 08–05728 SI, 2009 WL 1814592, at *2 (N.D.Cal. June 24, 2009). It is undisputed here Nationstar acted solely as the servicer of appellants' loans (*e.g.*, EOR 3:356) and therefore cannot be liable under the RFDCPA.

Further, appellants' mortgage loans secured by deeds of trust are not "debts" as the term is defined by the RFDCPA. The RFDCPA defines "debt" as "money, property or their equivalent which is due or owing or alleged to be due or owing

from a natural person to another person." Cal *Civ. Code* § 1788.2(c). Many courts have found a mortgage loan is not a "debt" under the RFDCPA. *See Bhandari v. Capital One, N.A.*, No. 12-04533 PSG, 2013 WL 1736789, at *6 (N.D. Cal. Apr. 22, 2013) ("Regardless of whether a mortgage is a consumer debt under the FDCPA, a mortgage is not a consumer debt for purposes of the Rosenthal Act."); *Gardner v. Am. Home Mortg. Servicing, Inc.*, 691 F.Supp.2d 1192, 1198 (E.D. Cal. 2010); *Pittman v. Barclays Capital Real Estate Inc.*, No. 09 CV 241, 2009 WL 1108889, at *3 (S.D. Cal. April 24, 2009) (a "residential mortgage loan does not qualify as a 'debt' under the statute"); *see also Izenberg v. ETS Servs., LLC*, 589 F.Supp.2d 1193, 1199 (C.D. Cal. 2008) (A home mortgage is not a debt within the meaning of the act and foreclosure "does not constitute debt collection under the RFDCPA."); *Keen v. Am. Home Mortg. Servicing*, No. 2-09-01026, 2009 WL 3380454, at *5 (E.D. Cal. Oct. 21, 2009).

The rationale behind finding mortgage loans are not debts under the RFDCPA is basic. The RFDCPA protects consumers from debt collection practices for consumer debts which are created through transactions in which "property, services or money *is acquired on credit* ... primarily for personal, family, or household purposes." Cal. *Civ. Code* § 1788.2(e)-(f) (emphasis added). Here, we are not dealing with credit card debt, but rather mortgage loans to secure the lending of money through a lien on real property.

Even assuming the Court finds Nationstar to be a "debt collector" ***and*** appellants' mortgage loans to be debts under the RFDCPA, appellants have failed to show how Nationstar actually violated any provision of the RFDCPA. Appellants first allege Nationstar violated *Civil Code* § 1788.17 (which incorporates provisions of the FDCPA into the RFDCPA) by sending appellants the Notice—a three-page document informing them the servicing of their loan was transferred to Nationstar. (EOR 3:378.) According to appellants, the Notice violates 15 U.S.C. § 1692e(10) by using false representations or deceptive means to collect a debt and violates 15 U.S.C. § 1692f by using unfair or unconscionable means to collect a debt. *Id.* A simple review of the Notice makes clear Nationstar did not send appellants this letter with the intention of collecting money—at no point does Nationstar state a specific payment is due, when it is due by or how to pay it. Instead, Nationstar conveys the information it received from Aurora to each appellant and simply asks appellants to confirm the information received is accurate. (EOR 3:386-388.)

Section 1692e prohibits a debt collector from using "false, deceptive, or misleading" representations or means in the collection of any debt, unless "such action is lawful and the debt collector or creditor intends to take such action." Section 1692e(10) prohibits the use of "any false representation or deceptive means to collect or attempt to collect any debt." Section 1692f prohibits a debt collector

from using unfair or unconscionable means to collect or attempt to collect a debt by engaging in a variety of acts. Appellants have failed to allege facts sufficient to prove a violation of either section.

*First,* nowhere in the 5AC or the opening brief do appellants adequately explain how a *statutorily-required* notice about a servicing transfer constitutes an attempt to collect a debt. Simply and repeatedly insisting it is does not make it so. (Opening Brief, 11.) Under RESPA, Nationstar was required to notify appellants of the servicing transfer on their mortgage loans. *See* 12 U.S.C. § 2605(c) At the same time, the FDCPA required Nationstar ***within five days*** *after the initial communication with a consumer* to (1) identify the amount of the debt owed; (2) identify the creditor to whom the debt is owed; (3) notify the debtor "that unless the consumer, *within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector*"; (4) notify the debtor "that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector"; and (5) notify the debtor that "upon the consumer's written request within the thirty-day period, the debt collector will

41

provide the consumer with the name and address of the original creditor, if different from the current creditor." See 15 U.S.C. § 1692g(a).

The debt validation letter complied in all respect with the mandates governed by section 1692g(a). In this case, compliance with the FDCPA required Nationstar to send the debt validation within five days of the July 15, 2012 notice of assignment, sale or transfer of servicing rights. (EOR 3:386.) Sending the debt validation on the same day fell squarely within the parameters and requirements enforced by the statute. (EOR 3:388.) As with RESPA, nothing in the FDCPA contemplates notice exceptions for transferee servicers when a borrower has filed a suit against the former servicer nor should Nationstar be expected to take it upon itself to read any such permissions in the statute. Further, the letter identified the investor as U.S. Bank, N.A. as the Trustee for the LSX Series 2007-16N trust and stated the amounts purported to be due. (EOR 3:386-388.) ***Such letters are explicitly exempt as an attempt to collect a debt.*** 15 U.S.C. § 1692g(e); *see also Hart v. FCI Lender Servs., Inc.*, No. 13-CV-6076 CJS, 2014 WL 198337, at *6 (slip copy) (W.D.N.Y. Jan. 15, 2014) ("[T]he transfer-of-servicing letter was not a communication with a consumer in connection with the collection of any debt, and therefore, was not subject to 15 U.S.C. § 1692g.").

*Second*, even if the Notice did *arguendo* constitute an attempt to collect a debt, appellants have not shown how the notices were "false, deceptive, or

misleading" or "unfair or unconscionable" as a result of any act taken by Nationstar. Appellants allege the Notice violates the RFDCPA because it overstated the amount due and attempted to collect charges to which Nationstar was not legally entitled. (EOR 3:378.) In support, appellants point to acts done not by Nationstar, but by Aurora. Specifically, appellants allege <u>Aurora</u>, not Nationstar, unreasonably delayed the loan modification, thus causing an increase in the principal balance on the loan and additional fees and costs.[12] (EOR 3:378.) This is so despite appellants making virtually zero effort to establish successor liability between Nationstar and Aurora.

Further misleading the Court, appellants' 5AC alleges the Notice violates *Civil Code* § 377.14(a). Section 377.14(a) states a debt collector violates the RFDCPA when it attempts to collect a debt by obtaining an affirmation of a debt which was discharged in bankruptcy where the writing does not clearly disclose that the debtor is not legally required to affirm the debt. *Cal. Civ. Code* § 377.14(a). Anderson filed for Chapter 13 bankruptcy protection in January 2011,

---

[12] The district court recognized the same in its April 2014 Order: "All of the allegations that the 5AC describes as leading to the overstated debt, such as unreasonable delays that increased arrearages and charging extra fees and costs, were done by Aurora. In dismissing the Third Amended Complaint, this Court dismissed the Rosenthal Act claims against Aurora with prejudice. The Court will not now permit those claims to be brought back into the litigation by substituting Nationstar as the Defendant." (EOR 1:13.) Appellants are not currently appealing the Order dismissing their Rosenthal Act claims against Aurora.

and is the only plaintiff alleged to have filed for bankruptcy protection at any time. (EOR 1:13; EOR 3:378.) However, *neither Anderson nor her loan were discharged*. Instead, Anderson's bankruptcy petition was **dismissed**. (EOR 1:13.) Nationstar was accordingly under no obligation to comply with Section 377.14(a) for any named party, and appellants' RFDCPA claims fail as a matter of law to the extent they are premised on this allegation.

*Lastly*, appellants allege Nationstar violated *Civil Code* § 1788.14(c) by directing the Notice to appellants directly instead of their counsel. (EOR 3:378-379.) Section 1788.14(c) prohibits a debt collector from contacting a debtor directly to collect a debt when it has been notified in writing that she is represented with respect to the debt. The Notice cannot constitute the collection of a debt as a matter of law but, assuming it did, Nationstar *was required under Federal law* to send the Notice directly to appellants. *See* 15 U.S.C. § 1692g (obligating a "debt collector" to send "the consumer" written notice of the debt); 12 U.S.C. § 2605(c)(1) (requiring that notice of servicing transfer must be sent to "the borrower."). *See also Santoro v. CTC Foreclosure Serv.*, 12 F. App'x 476, 480 (9th Cir. 2001) (finding statutorily required notices do not violate FDCPA's ban on contacting borrower in lieu of counsel). Nationstar did not send appellants the Notice to demand payment: at no point does Nationstar state a specific payment is due, when it is due by or how to pay it.

## CONCLUSION

While the depublication of *Aspiras* may tempt the Court to reconsider the question of whether or not a servicer owes a borrower a duty of care, the facts of this instant action to do not warrant further review, remand or reversal of the district court orders. Despite *six* opportunities to do so, appellants have altogether failed to allege facts to support imposing a duty of care on either Aurora or Nationstar.

Appellants' newly crafted claims for wrongful death and violations of the Rosenthal Act similarly have no basis in fact or in law. As both federal and California statutory frameworks provide, Nationstar was in compliance with all governing regulations when it sent appellants notice of the service transfer of their loans. Appellants' claim for wrongful death—which has transitioned into a suggestion appellees' should be found culpable of murder—is equally deficient inasmuch as appellants fail to allege facts evidencing tortious conduct on behalf of Aurora or Nationstar.

DATED this 11th day of June, 2015

Respectfully submitted,

By: */s/ Justin D. Balser*
Justin D. Balser

Justin D. Balser
**AKERMAN LLP**
725 S. Figueroa Street, 38th Floor
Los Angeles, California 90017

Melissa L. Cizmorris
**AKERMAN LLP**
1400 Wewatta St., Suite 500
Denver, Colorado 80202


Attorneys for Defendants/Appellees
AURORA LOAN SERVICES LLC
AND NATIONSTAR MORTGAGE
LLC

## <u>CERTIFICATE OF COMPLIANCE</u>

1.  This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because:

☒  this brief contains 10,979 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), *or*

☐  this brief uses a mono-spaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because:

☒  this brief has been prepared in a proportionally spaced typeface using <u>Microsoft Word 2010, Times New Roman Font, and size 14-point font</u>, *or*

☐  this brief has been prepared in a mono-spaced spaced typeface using *(state name and version of word processing program)* _____ with *(state number of characters per inch and name of type style)*_____.

Signature:          *s/ Justin D. Balser*_____
Attorney for:      AURORA LOAN SERVICES LLC AND
                          NATIONSTAR MORTGAGE LLC
Date:                  June 11, 2015

Adopted from Form 6 of the Federal Rules of Appellate Procedure

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, counsel for Appellees Aurora and Nationstar certify that they are not aware of the existence of any related cases as that term is defined in Circuit Rule 28-2.6.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing **APPELLEES AURORA LOAN SERVICES LLC'S AND NATIONSTAR MORTGAGE LLC'S ANSWERING BRIEF** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on June 11, 2015. I further certify that I served the foregoing document via CM/ECF to:

>Lenore Albert, Esquire, Attorney
>Law Offices of Lenore Albert
>7755 Center Avenue
>Huntington Beach, CA 92647
>*Attorneys for Plaintiffs-Appellants*

Dated: June 11, 2015            By: ___*/s/ Tamara Landgren*___
                                       Tamara Landgren